## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff/Respondent,

v.                                   No. CIV 07-96 MCA/LFG
                                   No. CR 05-458 MCA

MARTIN ARANDA-BRIONES,

        Defendant/Movant.

## MAGISTRATE JUDGE'S AMENDED[1] FINDINGS AND RECOMMENDED DISPOSITION[2]

### Findings

1.      On January 25, 2007, Movant Martin Aranda-Briones ("Aranda") filed an application for writ of habeas corpus under 28 U.S.C. § 2255. [Doc. No. 1.]  Respondent United States was allowed an extension of time to file its Response until March 15, 2007, and filed it on that date.

---

[1]On April 19, 2007, the Court issued its original findings and recommended disposition in this case. [Doc. 9.]  At that time, Aranda was given until May 7, 2007, to file objections.  Instead of filing objections, on April 23, 2007, Aranda filed an "Answer to Government's Response" in support of his initial petition and in opposition to the government's response.  [Doc. 10.]  The Court now issues these amended findings and recommended disposition in order to address Aranda's "answer."  The Court does not construe Aranda's answer or reply as objections to the Court's original findings and recommended disposition.  Instead, Aranda's objections will now be due within ten days after he is served with the amended findings and recommended disposition.  Aranda need not file separate objections to the original findings and recommended disposition.  In other words, Aranda should file one set of objections to the amended findings and recommended disposition.

[2]Within ten (10) days after a party is served with a copy of these amended findings and recommendations, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such findings and recommendations. A party must file any objections with the Clerk of the U.S. District Court within the ten-day period allowed if that party wants to have appellate review of the findings and recommendations.  If no objections are filed, no appellate review will be allowed.

[Doc. No. 6.]  In its response, the government referred to an attached affidavit of trial counsel for Aranda but the affidavit was not attached to the response.  On April 12, 2007, the government attempted to file the supporting affidavit as a separate pleading but mis-filed it electronically by linking it to the wrong pleading.  In other words, the government should have linked it to its response [Doc. 6] but instead linked it to its response to an earlier pleading, "Response in Opposition to Motion for Extension of Time to File Response/Reply ." [*See* Doc 7.]  Because of the mistake, the electronic docket entry reflects that the April 12 pleading was "was filed in error."  On April 12, 2007, the government re-filed the affidavit [Doc. 8] and correctly linked it to its original March 15, 2007 response [Doc. 6].  On April 23, 2007, Aranda filed an "Answer to Government's Response," [Doc. 10], arguing in part that the government's response was untimely and that it should be stricken. The § 2255 motion is fully briefed.  Aranda requests an evidentiary hearing on claims that trial counsel was ineffective and asks that the Court "remand for further review and strike the additional 2-levels of enhancement, and resentence in accordance with precedent." [Doc. No. 1, p. 14.] Aranda is incarcerated at the Federal Transfer Center in Oklahoma.  [Doc. No. 1, p. 2.]

2.    In making its recommendation on this matter, the Court examined the pleadings and attachments in this civil matter (including Aranda's reply), trial counsel's affidavit, and the pleadings in the related criminal case, including the Presentence Report ("PSR").  The Court also obtained a transcription of the plea proceedings held on April 19, 2005.  After careful consideration of the pertinent law, pleadings, and plea proceeding transcript, the Court recommends that Aranda's § 2255 petition be denied and dismissed, with prejudice.  Because it is possible to resolve the issues on the pleadings, and the record establishes conclusively that Aranda is not entitled to relief, the Court

concludes that no evidentiary hearing is necessary. *See* 28 U.S.C. § 2255; United States v. Kennedy, 225 F.3d 1187, 1193 (10th Cir.2000), *cert. denied*, 532 U.S. 943 (2001).

### Background

3.     On January 6, 2005, a criminal complaint was filed in United States of America v. Martin Aranda-Briones, 05cr458 [Doc. 1].  The criminal complaint alleges that Aranda, an alien to the United States, was encountered and arrested by Border Patrol Agents in Columbus, New Mexico on about January 4, 2005.  The complaint further alleges that Aranda admitted he was a citizen of Mexico, had illegally crossed the border from Mexico into the United States, and did not have the consent of the Attorney General or the Secretary for Homeland Security to lawfully be in the United States. [Doc. 1, 05cr458.]   Immigration records indicated that Aranda had been deported on two prior occasions, the most recent being on December 5, 2004.  Criminal records checked at that time showed that Aranda was convicted on or about June 18, 1993 of selling, furnishing, etc. marijuana/hash in Fresno, California and that he was sentenced to two years in prison.  [Doc. 1, 05cr458.]

4.     Aranda was appointed counsel (Dennis Montoya, Esq.), who filed a Waiver of Preliminary Hearing and Continuance of Grand Jury Presentment on January 11, 2005.  [Doc. 4, 05cr458.] On April 19, 2005, felony plea proceedings were held, at which Aranda was represented by counsel.  [Doc. 12, 05cr458.]  A Spanish-language interpreter was present during the plea proceedings.  A waiver of indictment was executed and filed, and an Information was filed, stating that Aranda had previously been convicted of an aggravated felony as defined in 8 U.S.C. § 1101(a)(43), "that being Transportation and Sale of Marijuana" and that Aranda had been deported

3

on or about April 28, 1994. Aranda was charged with Reentry of a Deported Alien Previously
Convicted of an Aggravated Felony. [Doc. 11, 05cr458.]

  5.  At the plea proceedings, Aranda acknowledged receipt and review of the Information.
The Information was discussed with Aranda in Spanish. [4/19/05 Plea Transcript, a pp. 3-4.] Aranda
acknowledged that he had reached a Plea Agreement with the government, he had reviewed the terms
of the Agreement with his attorney, he had no questions about the contents of the Agreement, he had
signed the Plea Agreement, and that his signature indicated he understood the entirety of the
Agreement. [Id., pp. 4-5.] Mr. Montoya, counsel for Aranda, stated at the plea proceeding that
Montoya had had "extensive discussions about the plea agreement" with Aranda. [Id., at p. 6.] At
the plea proceeding, Aranda was advised of the charges and of the maximum possible penalty of 20
years imprisonment, $250,000 fine, and three years of probation. The sentencing guideline range was
discussed, and a PSR was ordered. Aranda testified that his attorney had discussed the sentencing
guidelines with him and that he had no questions about the guidelines. Aranda entered a plea of guilty
to the charges in the Information. [Doc. 12, 05cr458; 4/19/05 Plea Proceeding.]

  6.  The April 19, 2005 Plea Agreement, signed by Aranda and counsel for both parties,
[Doc. 15, 05cr458], provides, *inter alia*, that Aranda had thoroughly reviewed all aspects of the case
with his attorney and was fully satisfied with his attorney's legal representation. [Doc. No. 1, Plea
Agreement, Attachment; Doc. 15, 05cr458.] During the plea proceeding, Aranda also testified that
he was satisfied with his attorney and had no complaints at all with his legal representation. [4/19/05
Plea Transcript, at p. 6.]

  7.  The Fed. R. Crim. P. 11(c)(1(C) Plea Agreement states that Aranda understood the
maximum penalties the Court could impose, the parties agreed that Aranda's final adjusted sentencing

guideline offense level was 19, and Aranda's criminal history category would be determined by the United States Probation Office and reflected in the PSR. At the plea proceeding, Aranda testified he understood the Plea Agreement provided him with a benefit and that he understood his "category . . . is going to go lower and everything is fine. . . ." [4/19/05 Plea Transcript, at pp. 9-10.] He stated he also understood he might receive a lesser sentence because of the Plea Agreement. [Id., p. 10.] Mr. Montoya explained to the Court that the Plea Agreement "expressly states that the purpose of all of the stipulations is to result in a specified guideline level that's discussed with my client, that represents a substantial reduction if he were convicted and is probably better than could be obtained otherwise." [Id.] The written Plea Agreement also states that Aranda recognized the Agreement conferred a benefit upon him and that no downward departure was appropriate.

8.      In the Plea Agreement, Aranda knowingly waived his right to appeal the sentence within the statutory range applicable to the statute(s) of conviction and agreed to waive any collateral attack, except for a claim of ineffective assistance of counsel. The Plea Agreement further states that Aranda "agrees and represents that this plea of guilty is freely and voluntarily made and not the result of force or threats or of promises apart from those set forth" herein. [Doc. 15, 05cr458.] At the plea proceeding, Mr. Montoya stated to the Court that he had explained to Aranda that Aranda was giving up his right to appeal if he entered into the Plea Agreement. Mr. Montoya stated: "[Aranda] has discussed with me the fact that under this agreement he waives his right to appeal any sentence that is permitted by law." [4/19/05 Plea Transcript, at p. 11.]

9.      In accord with the parties' Plea Agreement, following the adjudication of guilt, a PSR was prepared and a copy provided to counsel. Aranda was afforded an opportunity to challenge the factual assertions in the PSR, but did not do so.

10.     On August 30, 2005, sentencing proceedings were held, at which Aranda attended and represented by counsel.  [Doc. 19, 05cr458.]  The Court accepted the Rule 11(c)(1)(C) plea, and in accord with its terms, fixed the adjusted offense level at 19.  The Court's sentencing minutes reflect that Mr. Montoya did not object to the PSR but asked for the Court's discretion in sentencing Aranda at the low end of the sentencing guidelines.  The Court imposed a low end guideline sentence of 46 months of incarceration and a 2-year period of unsupervised release.  The Judgment was entered on August 30, 2005.  [Doc. 20, 05cr458.]

11.     On September 12, 2005, notwithstanding his agreement not to appeal, Aranda, acting *pro se*, filed a Notice of Appeal, stating that his attorney had not sent him a copy of the Judgment in the case; thus, he could not attach the Judgment.  [Doc. 21, 05cr458.]

12.     On November 10, 2005, Mr. Montoya filed an Unopposed Motion for Withdrawal and Substitution of Appellant's Counsel on Appeal in the Tenth Circuit Court of Appeals.  [Doc. No. 1, motion, attachment.]  As grounds for the motion, counsel stated:

1.     The Notice of Appeal herein was filed pro se by Defendant/Appellant without consulting with undersigned counsel;

2.     There exist fundamental differences of opinion between undersigned counsel and Mr. Aranda Briones regarding this appeal that would hamper effective attorney/client communications;

3.     So fundamental are the differences between Mr. Aranda Briones and undersigned counsel that undersigned counsel is unable even to effectively state the issues to be included in this appeal for purposes of preparation of the docketing statement, which counsel respectfully requests be postponed until substitute counsel can enter an appearance;

4.     Mr. Martin Aranda Briones has been consulted, and requests new counsel . . . .

[Doc. No. 1, attached motion.]

13.    On February 14, 2006, the Tenth Circuit entered an Order granting Mr. Montoya's

motion to withdraw and appointing the Colorado Federal Public Defender as counsel for Aranda.

[Doc. 23, 05cr458.]

14.    Aranda's appeal was limited to one issue:   "Was the imposition of a term of

'unsupervised supervised release' unreasonable?"   On November 9, 2006, the Tenth Circuit issued

an Order and Judgment granting the government's motion to enforce the appeal waiver in Aranda's

plea agreement.   Aranda's counsel conceded that the government's motion was enforceable.   Thus,

the appeal was dismissed.   [Doc. 26, 05cr458.]   United States v. Aranda-Briones, 2006 WL 3248068

(10th Cir. Nov. 9, 2006).

### § 2255 Petition and Claims

15.    On January 25, 2007, Aranda filed a § 2255 petition, asserting various grounds of

ineffective assistance of counsel.   [Doc. No. 1.]   The Plea Agreement required that Aranda waive all

post-conviction challenges with the exception of a claim of ineffective assistance of counsel.   In the

§ 2255 petition, Aranda asserts that "Montoya was wholly ineffective in his assistance throughout the

district court's proceedings.   Counsel failed to fully communicate and explain the proceedings, the

actions of Petitioner and Counsel, and the consequences thereof."   [Doc. No. 1, p. 5.]

16.    More specifically, Aranda alleges that in Montoya's motion to withdraw, Montoya

cited as reasons for withdrawal that "Petitioner was forced to file a *pro se* Notice of Appeal, without

the assistance of counsel, as Counsel failed to timely file notice himself."   Aranda provides misleading

excerpts of the motion to withdraw, e.g., ". . . counsel is unable to even effectively state the issues

. . . until substitute counsel can enter an appearance."   [Doc. No. 1, p. 5.]

17.     Aranda further contends that Montoya allowed Aranda, or recommended that Aranda enter into a plea agreement that would affect a greater punishment than a jury's verdict alone would support.  In other words, Aranda states that the offense alone would have supported a much lower sentencing range than the level 19 to which he agreed in the Plea Agreement.  Additionally, he asserts that the criminal history category in the Plea Agreement should have been as low as a Level II rather than IV.  Aranda also states he was confused and coerced into waiving all of his statutory appellate review rights, that Montoya's alleged negligence "very nearly" resulted in a procedural default that would have affected the premature dismissal of his direct appeal, that counsel "nearly" incurred disciplinary action upon himself as well, and that counsel failed on numerous occasions to provide the minimum standard of assistance of counsel.[3]  According to Aranda, "[b]y Counsel's own admissions, there was clearly not an effective and productive attorney/client relationship present." [Doc. No. 1, p. 5.1.]

18.     Aranda argues that he was severely prejudiced by trial counsel's failure to preserve his appellate and collateral review rights because application of a recent United States Supreme Court decision, Lopez v. Gonzales, __ U.S. __, 127 S.Ct. 625 (Dec. 5. 2006), would have resulted in a lower sentencing range by reducing "4 additional levels of enhancement."  [Doc. No. 1, p. 6.]

19.     Aranda also claims that his criminal history category was miscalculated and that trial counsel erred in failing to object to the miscalculation.

_____

[3]Aranda apparently refers to a form letter, dated November 10, 2005, from the Tenth Circuit Court of Appeals, informing Montoya that counsel had not filed a copy of a transcript order, not served a designation of record on the court clerk, not filed an entry of appearance and not timely filed a docketing statement.  Montoya was warned that failure to correct the deficiencies could result in the a dismissal of the appeal and attorney discipline. [Doc. No. 1, attached 11/10/05 letter.]  As explained above, Aranda filed the Notice of Appeal *pro se* on September 12, 2005.  Montoya filed an unopposed motion to withdraw counsel on November 10, 2005, stating he had not been informed of the *pro se* notice of appeal.  The Tenth Circuit's letter to Montoya was dated November 10, 2005, the same day, Montoya filed his unopposed motion to withdraw.

20. The government responds that Aranda received effective assistance of counsel and that his petition should be denied and dismissed. More specifically, the government states that pursuant to the Plea Agreement, Aranda's adjusted offense level was 19 whereas the unadjusted offense level (without the Agreement) would have been 21. The probation officer calculated Aranda's criminal history category as IV. The resulting guideline range for an adjusted offense level of 19, with Aranda's applicable criminal history, was 46 to 57 months, and Aranda was sentenced to the low end of that guideline range – 46 months. In contrast, a guideline range for an offense level of 21 for a criminal history category of IV would have been 57 to 71 months. Thus, the Agreement reached by the parties reduced Aranda's exposure to incarceration by 11 months.

21. The government also argues that the Supreme Court decision in Lopez does not apply to Aranda's conviction or sentencing. In Lopez, the Supreme Court held that a misdemeanor under the Controlled Substances Act (*e.g.,* possession of an illegal drug) was not a felony punishable under the Controlled Substances Act for INA purposes. This was true even though the conduct was a felony under state law. Lopez, 127 S. Ct. at 625-26. The government, in Lopez, argued that "possession's felonious character as a state crime is enough to turn it into an aggravated felony under the INA . . . ." Id. at 626.

22. In Lopez, the Supreme Court explained that an aggravated felony on a criminal record resulted in worse collateral effects than a "felony conviction simple." Id. at 628. For example, unlike the case of a felony conviction simple, the Attorney General has no discretion to cancel the removal of a person who is otherwise deportable if s/he is convicted of an aggravated felony. But, in Lopez's case, he pled guilty to aiding and abetting another person's possession of cocaine. Id. Thus, the

defendant was convicted of simple possession that did not amount to trafficking and it could not be characterized as an aggravated felony for INA purposes.

23.     The government argues that <u>Lopez</u> has no bearing on Aranda's case because Aranda's earlier felony conviction was not for simple possession.  Aranda's sentencing guideline offense level for illegally re-entering the United States was increased by 16 levels because of his previous conviction on two counts of Transporting/Sale of Marijuana in California.  That prior conviction was for a drug trafficking crime, which constitutes an aggravated felony, unlike the situation presented by <u>Lopez</u>, where the defendant was convicted for aiding and abetting a crime of possession.

24.     The government also submitted an affidavit by trial counsel Montoya, supporting its request to deny and dismiss Aranda's § 2255 petition.  [Doc. No. 8.]

25.     The PSR, as reviewed by the Court, clearly states that Aranda was convicted of a drug trafficking offense that warranted a 16 level increase.  [PSR, ¶ 11.] The PSR further explains that the total adjusted offense level was 24 (basic offense level of 8 plus 16).  The government agreed to a two-level reduction for Aranda's demonstration of acceptance of responsibility and an additional one point reduction under U.S.S.G. § 3E1.1(b), bringing the total offense level to 21.  Thus, the PSR indicates Aranda's total offense level was 21.  But for the Rule 11(c)(1)(C) stipulation/agreement to reduce the offense level further to 19, Aranda would have been sentenced at an offense level of 21, which clearly would have increased his period of incarceration.

## Analysis

26.     Generally, "[t]he benchmark for judging any claim of ineffectiveness must be whether the counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result."  <u>Strickland v. Washington</u>, 466

U.S. 668, 686, 104 S. Ct. 2052 (1984)  To obtain relief on an ineffective assistance of counsel claim, a defendant must satisfy the requirements set out in Strickland.  First, the movant "must show that counsel's representation fell below an objective standard of reasonableness."  Id. at 688.  In other words, trial counsel's performance was neither reasonable under prevailing professional norms nor sound trial strategy.  Second, the movant must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694.  A probability is reasonable if it is sufficient to undermine confidence in the outcome.  Id.  The Court may address the performance and prejudice components in any order and need not address both if it concludes that the defendant failed to satisfy demonstrating one of the two prongs.

27.      In Strickland, the United States Supreme Court emphasized that judicial scrutiny of counsel's performance must be highly deferential.  A court should not second-guess counsel's representation after an adverse sentence.  Rather, an attorney's performance should be evaluated from counsel's perspective at the pertinent time, giving due regard to counsel's trial tactics and strategy, and thereby eliminating any distorting effects of 20/20 hindsight.  A court must indulge a strong presumption that counsel's conduct was reasonable.  Id. at 689.  The defendant has the burden of proof to overcome that presumption.  United States v. Cronic, 466 U.S. 648, 658 (1984).  "For counsel's [decision] to rise to the level of constitutional ineffectiveness, the decision . . .must have been 'completely unreasonable, not merely wrong, so that it bears no relationship to a possible defense strategy.'"  Hatch v. State of Okl., 58 F.3d 1447, 1459 (10th Cir. 1995) (internal citation omitted), cert. denied, 517 U.S. 1235 (1996), partially overruled on other grounds, Daniels v. United States, 254 F.3d 1180 (10th Cir. 2001).

11

28.     One year after Strickland, the Supreme Court considered an ineffective assistance of counsel claim in the context of examining whether a guilty plea was tainted due to counsel's performance.  In Hill v. Lockhart, 474 U.S. 52, 59, 106 S.Ct. 366 (1985), "[t]he Court held that a prisoner challenging a guilty plea because of ineffective assistance of counsel satisfies the prejudice inquiry by showing that the constitutionally ineffective performance 'affected the outcome of *the plea process.  In other words . . . that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty* and would have insisted on going to trial.'"  Miller v. Champion, 262 F.3d 1066, 1072 (10th Cir. 2001) (emphasis added by Court in Miller), *cert. denied*, 534 U.S. 1140 (2002).

29.     Thus, a defendant who challenges a guilty plea based on ineffective assistance of counsel must meet the Strickland two-prong test by demonstrating (1) deficient performance by counsel that (2) caused prejudice to the defendant, United States v. Gordon, 4 F.3d 1567, 1570 (10th Cir. 1993), *cert. denied*, 510 U.S. 1184 (1994), such that "but for counsel's errors, [defendant] would not have pleaded guilty and would have insisted on going to trial[.]"  In applying this standard, Court sometimes will look to the strength of the government's case "as the best evidence of whether a defendant in fact would have changed his plea and insisted on going to trial."  Miller, 262 F.3d at 1072.

30.     With respect to an ineffective assistance of counsel claim based on counsel's failure to file a notice of appeal, this claim, too, must be judged in accordance with the two-prong test set forth in Strickland, 466 U.S. at 687-88, 694.  For example, an attorney who disregards "specific instructions" from a defendant to file a notice of appeal acts in a manner that is professionally unreasonable.  Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000).  Under those circumstances, the

12

client need not demonstrate that his appeal would likely have had merit.  Id.  When a client does not specifically instruct his attorney to appeal, the question of whether counsel was ineffective depends on whether he or she consulted with the client about the appeal.  Id. at 478.

31.     An attorney need not always consult with a defendant regarding an appeal.  "[C]ounsel has a constitutionally imposed duty to consult with the defendant about an appeal where there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing."  Id. at 480.

32.     Here, there simply is no evidence to support Aranda's contention that Montoya "was wholly ineffective in his assistance throughout the district court proceedings," nor is there evidence showing that Montoya "failed to fully communicate and explain the proceedings" or consequences of the Plea Agreement to Aranda.  The plea proceedings, as described *supra* at ¶¶ 5-8, confirm that Mr. Montoya fully explained to Aranda (during "extensive discussions") the consequences of the Plea Agreement and that Aranda acknowledged his own understanding that the plea deal conferred a benefit upon him.  In sum, Montoya brokered a Plea Agreement that resulted in Aranda's exposure to 11 months less time than Aranda could have received had the Plea Agreement not been reached or had Aranda proceeded to trial.  Mr. Montoya's assistance in obtaining a Plea Agreement that substantially benefitted Aranda is not ineffective assistance.  Indeed, Mr. Montoya did what a reasonably competent attorney should have done.  Nothing in Aranda's pleadings demonstrate that Mr. Montoya's conduct fell below a reasonably objective standard.

33.     While Aranda alleges, without more, that Montoya did not fully communicate or explain the proceedings to Aranda, he does not claim that there was a language barrier.[4]  Morever, there was a Spanish language interpreter present at the plea proceedings, during which the Court thoroughly discussed all of the consequences of the Plea Agreement with Aranda.   A Spanish language interpreter was present at other court proceedings as well.  In addition, Aranda signed the written Plea Agreement, which states right above Aranda's signature line that "I have read this agreement and carefully reviewed very part of it with my attorney.  I understand the agreement and voluntarily sign it." [Doc. No. 1, attached Plea Agreement at p. 7.]  The written Plea Agreement also details the agreement reached between Aranda and the government, including possible consequences of the plea, i.e., the maximum period of imprisonment not to exceed 20 years and the stipulation to an adjusted offense level of 19.

34.     Aranda alleges that Montoya cited "the following reasons" as grounds for his motion to withdraw as counsel: "Petitioner was forced to file a *pro se* Notice of Appeal, without the assistance of counsel, as Counsel failed to timely file notice himself." [Doc. No. 1, p. 5, Ground One.]  This is a misstatement.  Montoya's motion to withdraw (attached to Aranda's Petition) states that Aranda's "Notice of Appeal . . . was filed *pro se* by [Aranda] without consulting with undersigned counsel . . . ."  In contrast to Aranda's assertions, Montoya's sworn statement is that Montoya did not file a notice of appeal because Aranda made no such request and moreover, he had no cognizable appellate issues and had agreed, as part of the Plea Agreement, not to appeal his sentence.  [Doc. No. 8, ¶ 5.]

_____

[4]Mr. Montoya is fluent in Spanish.

35.     Aranda also omits important portions of Montoya's motion to withdraw thereby giving the misleading impression that Montoya conceded he generally was unable to effectively state the issues (on appeal).   Instead, the actual motion to withdraw states that because fundamental differences of opinion existed between Aranda and Montoya, Montoya was unable to effectively state the issues to be included in an appeal.   Aranda does not dispute that there fundamental differences of opinion between counsel and himself.

36.     Montoya's sworn statement was that Aranda had no defense to the crime charged in the criminal complaint and that counsel believed it was likely that Aranda would have been convicted at trial.  [Doc. No. 8, ¶ 2.]  In the plea colloquy, Aranda testified that he was arrested on January 4, 2005, for illegally crossing into New Mexico from Mexico, had been convicted of the crime of transporting marijuana for sale prior to his re-entry into the United States and was deported after his earlier conviction.   Aranda expressly conceded he knew he was in the United States illegally and had not requested or obtained permission to enter the United States.   [Plea Transcript, at p. 15.]   The government stated, during the plea proceeding, that it could prove through competent and admissible evidence and beyond a reasonable doubt, that Aranda was found on January 4, 2005 in the United States without any documentation allowing him to legally be in the United States and had been previously deported in 1994 subsequent to a conviction for an aggravated felony – transportation of marijuana for sale.  [Id., at pp. 16-17.]  Aranda further testified that he believed the government could prove all of the aforementioned facts.  [Id. at 17.]  In his affidavit, Montoya testified that because of these circumstances, he advised Aranda to accept the "fast-track" plea offer extended to him that would result in exposure to less prison time.  In his § 2255 petition, Aranda never claimed he did not

want to plead guilty to the charges, that he wanted to proceed to trial or that he had a viable defense to the charges.

37.     With respect to an appeal, Aranda did file a *pro se* Notice of Appeal.  As stated *supra*, the Tenth Circuit dismissed the appeal because of the enforceable waiver of appellate rights agreed to by Aranda.  Notwithstanding the enforceable waiver of appellate rights, Aranda never states that he specifically instructed Montoya to file an appeal and that Montoya refused to follow instructions. In addition, Aranda does not identify any nonfrivolous issues he could have raised on appeal.  Aranda asserts that he was "severely prejudiced" by Montoya's failure to preserve his appellate and collateral review rights, but the only claim he identifies as a possible appellate issue is based on a Supreme Court decision issued after Aranda was sentenced.

38.     Even if <u>Lopez v. Gonzales</u>, 127 S.Ct. 625 (Dec. 5. 2006) retroactively applied to Aranda's conviction or sentencing, it would not have resulted in Aranda "not having been subjected to 4 additional levels of enhancement" for the previous aggravated felony conviction.  This is true because, as explained *supra*, <u>Lopez</u> addressed the issue of a simple felony conviction of possession, in contrast to the aggravated felony of drug trafficking for which Aranda previously was convicted.

39.     In addition, Montoya stated that Aranda had no issues for appeal.  [Doc. No. 8.] Counsel need not have consulted with Aranda about an appeal where there was an enforceable waiver of appeal rights and there were no nonfrivolous issues to appeal.  It is certainly not ineffective assistance of counsel not to file a notice of appeal under these circumstances.  Moreover, Aranda's assertion that he was "confused and coerced" into waiving his appellate rights is belied by Mr. Montoya's statement to the Court that Montoya had explained to Aranda the fact that under the Plea Agreement Aranda waived his right to appeal.  [4/19/05 Plea Transcript, at p. 11.]  Aranda further

testified that no one had made any promises or assurances to him other than those set out in the Plea Agreement, and that no one had threatened him to plead guilty.  [Id. at p. 8.]

40.    Last, Aranda claims that his criminal history category was miscalculated and that Montoya erroneously failed to object to the criminal history score.  However, the government observes that Aranda relies on an incomplete INS Form I-213 generated by the United States Border Patrol which was sent to Aranda as part of the government's discovery packet.  [Doc. No. 6, p. 5.] The government explains that the form is "notoriously inaccurate and presents a 'best guess' as to the defendant's criminal history" before United States Probation thoroughly investigates a defendant's criminal history.  The content of Form I-213 is derived from computerized records and is analogous to a National Crime Information Center check.  The government asserts that the PSR, prepared by the United States probation officer, reflects Aranda's correct criminal history, and that Montoya's decision not to challenge that score was reasonable given its accuracy.

41.    Aranda states, without any substantiation, that he was entitled to a lower criminal history score yet he admits the aggravated felony conviction, and there was no objection during his sentencing hearing that the information in his PSR was incorrect or inaccurate.  Moreover, Montoya testified that he reviewed the PSR with Aranda and that Aranda did not dispute any of the criminal convictions that contributed to Aranda's criminal history score.  [Doc. No. 8, ¶ 4.]

42.    The Court finds no basis to support any of Aranda's claims of ineffective assistance of counsel.  Aranda has not satisfied his burden in demonstrating deficient performance by counsel that caused prejudice to Aranda.  Nor is there any showing by Aranda that "but for counsel's [alleged] errors, [Aranda] would not have pleaded guilty and would have insisted on going to trial[.]" This is particularly true here, where Aranda had no defense to the charges and never claims he had

a defense.  In this case, trial counsel's trial performance was reasonable under prevailing professional norms, particularly in light of the deal brokered on behalf of Aranda that resulted in reducing Aranda's exposure to jail time by 11 months.

### Aranda's Recently Filed Answer[5]

43.     As stated above, Aranda filed an answer in support of his petition after the Court entered its original findings and recommended disposition on April 19, 2007.  The Court amends its findings and recommended disposition in order to address all additional issues raised by Aranda in the answer.

44.     Aranda argues in his answer that the government did not file a response to his petition until April 12, 2007, which Aranda did not receive until April 17, 2007.  Thus, he claims that the government's response was filed well beyond the extended deadline of March 15, 2007.  Aranda is mistaken.  The government filed its response on March 15, 2007, and the response is timely.[6]  [Doc. 6.]  As explained above, the government inadvertently failed to attach a supporting affidavit it referred to in its response, and then, in attempting to file the affidavit as a separate document on April 12, 2007, the government initially linked the affidavit to the wrong pleading.  Later, on April 12, 2007, the government filed the affidavit and properly linked it to the March 15, 2007 response.  [Doc. 8.]  The Court denies Aranda's request to strike the response as untimely.

---

[5]The Court notes that the Rules Governing Section 2255 Proceedings do not provide for the filing of a traverse or answer, unless there is a showing of special circumstances.  United States v. Rael, 69 F.3d 549 (Table, Text in Westlaw), 1995 WL 395787 at *2 (10th Cir. July 6, 1995) (*citing* Advisory Comm. Notes to Rule 5 of the Rules Governing Section 2255 Proceedings).  Here, while Aranda has not demonstrated special circumstances to warrant the filing of an answer, the Court elects to consider it.

[6]In the certificate of service on the March 15, 2007 response, the government states that it mailed the response to Aranda on that date.  [Doc. 6, p. 6.]  It is not clear why Aranda would not have received a copy until April 17.

45.     In the answer, Aranda re-argues his position that trial counsel Dennis Montoya was constitutionally ineffective in his representation.  Aranda again selectively cites portions of the Motion to Withdraw filed by Montoya.  In view of the actual language in the Motion to Withdraw, the Court rejects Aranda's arguments.  The arguments and selective citations are misleading and improper.  [*See supra* at ¶¶ 12, 16, 34.]

46.     Aranda also argues that his prior conviction for "transporting/sale" of marijuana in California [Doc. 10, p. 6] was not a "drug trafficking" crime and actually was nothing more than a "simple possession offense."   The Court rejects this argument.   [*See supra* ¶ 36; PSR; Plea Transcript.]

47.     In addition, Aranda asserts that two criminal history points should have been stricken from his criminal history score, thereby lowering his criminal history category to level III.   He contends that criminal history points were levied against him pursuant to two misdemeanor convictions in 1986 and that the Sentencing Guidelines preclude the scoring of misdemeanor convictions older than ten years.  In examining the PSR, Aranda's criminal history lists a number of adult criminal convictions, dating from 1986 through 2004.  However, no points were scored for the 1986 conviction or the 1989 conviction.  Thus, Aranda has not established that his criminal history was miscalculated.  Moreover, Aranda had an opportunity to challenge the PSR and the calculation of his criminal history and did not do so.  The Court again concludes that Montoya's decision not to challenge the criminal history score and the PSR was reasonable given their accuracy.

48.     Finally, Court rejects Aranda's request for an evidentiary hearing and supplementation of the record for the reasons set out *supra* at ¶ 2.

**<u>Recommended Disposition</u>**

That Martin Aranda-Briones' § 2255 Petition [Doc. No. 1] be denied and that the action be

dismissed with prejudice.


Lorenzo F. Garcia
Chief United States Magistrate Judge